# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CNH INDUSTRIAL AMERICA LLC, <br><br> Plaintiff, <br> v. <br><br> JONES LANG LASALLE AMERICAS, INC., <br><br> Defendant. | Case No. 15-CV-981-JPS <br><br><br> **ORDER** |

**1.  INTRODUCTION**

On September 30, 2016, after a trial to the Court, judgment was entered in this matter in favor of the plaintiff, CNH Industrial America LLC ("CNH"), for approximately $3 million. (Docket #179). This judgment exceeded by several hundred thousand dollars the amount for which CNH offered to settle with the defendant, Jones Lang LaSalle Americas, Inc. ("JLL"), a month and a half earlier. (Docket #187-7).

Following trial, on October 13, 2016, CNH timely submitted its bill of costs totaling $304,153.49. (Docket #186). JLL objected to some of those costs, including the biggest-ticket item: photographs of the signs at all of CNH's dealerships. (Docket #197). CNH responded to JLL's objections. (Docket #201). On February 6, 2017, the Clerk of Court issued its taxation of costs, taxing costs in the amount of only $24,695.50. (Docket #212).

Both parties appealed. (Docket #193 and #203).[1] During the pendency of the appeal, CNH filed motions before this Court seeking an amendment of the judgment to include statutory interest and double taxable costs pursuant to Wisconsin law, as well as review of the taxation of costs issued by the Clerk of the Court on February 6, 2017. (Docket #189 and #213). The Court agreed to review the issues presented in CNH's motions, but not before the appeal was resolved. (Docket #222).

On March 12, 2018, the Court of Appeals issued its mandate, affirming this Court's judgment. (Docket #223). The parties attempted to resolve their disputes about costs and interest without resort to further motion practice in this Court, including by mediating their issues before Magistrate Judge David E. Jones, but those efforts were not successful. *See* (Docket #230 and #231). In light of this, CNH has again filed a motion for statutory interest, double costs, and review of the Clerk of Court's taxation of costs. (Docket #232).

The parties' briefing reveals that they agree that CNH is entitled to double its taxable costs, but they dispute the amount of those costs. The parties also disagree as to the rate of interest to be applied to those costs. In this Order, the Court resolves those issues, finally putting this case to bed.

## 2. BACKGROUND

This lawsuit arose out of a contract dispute. In 2007, CNH began a corporate rebranding program for its New Holland Agriculture line of products (the "Rebranding Program"). (Docket #174 at 4, Proposed Findings of Fact; Docket #178 at 5, Transcript of Bench Trial Decision

---

[1] Plaintiff voluntarily dismissed its cross-appeal on June 7, 2017. (Docket #221).

wherein the Court adopted the parties' proposed facts). The Rebranding Program would involve, among other things, the manufacture and installation of new signs at more than one thousand CNH dealers in the United States and Canada. (Docket #174 at 4). CNH retained JLL as its project manager for the Rebranding Program. *Id.* at 5. CNH and JLL entered into a service agreement under which JLL was obligated to research and document warranty information for all raw materials and sub-components, oversee manufacturing that met JLL's and CNH's expectations for quality control, negotiate the best possible warranty program for the signs, disclose all elements of the warranty program to CNH, and provide ongoing management services for warranties for one year following installation. *Id.* at 5–6.

At trial, CNH proved that JLL breached these obligations, causing CNH to suffer $5,482,735.00 in damages in replacing failed signs manufactured with defective vinyl. (Docket #178 at 20; Docket #179). The Court further determined that a contractual limitation on liability provision contained in the parties' agreement was enforceable, and, in accordance with its terms, CNH's recovery was limited to such amounts as CNH previously paid as project management fees to JLL, which amounted to $3,026,361.60, together with any additional amounts that JLL may successfully recover from third-party service providers. *Id.*

3. ANALYSIS

   3.1 REVIEW OF COSTS

Federal Rule of Civil Procedure 54(d)(1) permits courts to award costs to a prevailing party. The Court may award costs that "fall into one of the categories of costs statutorily authorized for reimbursement." *Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 427 (7th Cir. 2000). Under 28 U.S.C. § 1920, a

court may tax the following expenses as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretative services under 28 U.S.C. § 1828.

In the instant motion, CNH asks this Court to review the Clerk's taxation of costs and increase the taxed amount by $279,457.99. With the strictures of Section 1920 in mind, the Court turns to the specific categories of costs CNH seeks to recover.

### 3.1.1 Photographs of signs installed at dealer locations

By far the greatest cost for which CNH seeks compensation is the amount it spent to obtain photographs of the signs at more than 700 dealer locations—$208,611.30 in total. CNH argues that this is a compensable "exemplification" cost. *See* 28 U.S.C. § 1920(4).

The Seventh Circuit construes the term exemplification broadly to include a "wide variety of exhibits and demonstrative aids." *Cefalu*, 211 F.3d at 427–28; *see also EEOC v. Kenosha Unified Sch. Dist. No. 1*, 620 F.2d 1220, 1227 (7th Cir. 1980) (exemplification includes, for example, the preparation of "maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials[]") (quotation omitted). However, the cases also draw a line "between the cost of conducting the research and analysis eventually reflected in the exhibit, and the cost of actually preparing the exhibit itself." *Cefalu*, 211 F.3d at 427–428. The latter expense is compensable under Section 1920(4), while the former is not. *Id.* at 427 n. 5.

Further, the court cannot award costs for exemplification unless it determines that the particular exemplifications were "necessarily obtained for use in the case." *Id.* at 428 (quoting 28 U.S.C. § 1920(4)). In making this determination, the court may consider whether the exemplification was "vital to the presentation" or "merely a convenience or, worse, an extravagance." *Cefalu*, 211 F.3d at 428–429.

CNH contends that to prove at trial the precise number of failed signs at issue and the extent of CNH's damages in replacing them, CNH was constrained to hire a vendor to take 14,604 photographs of the signs installed at 740 dealer locations. (Docket #233 at 10). It cost CNH $208,611.30 to do so. *Id.* Before undertaking these efforts, CNH says that it attempted to negotiate with JLL a less expensive method of developing the evidence to present at trial. *Id.*; *see also* (Docket #202-1, #210). CNH accuses JLL of refusing to even discuss any less expensive method. (Docket #233 at 10).

The full story is not quite as one-sided as CNH tells it. Although CNH did suggest to JLL early in the case that the parties jointly develop a protocol for determining the nature and extent of the defective signs, *see* (Docket #12 at 5 and #202-1), CNH did not send a proposal to this effect when JLL asked for one, *see* (Docket #210 at 2–3). Further, although CNH dispatched its vendor to photograph the signs at all of its dealership locations, only 686 of those locations were found to have defective signs. (Docket #167-11 at 2 and #174 at 1). Finally, by the time of trial, only 260 dealers had assigned to CNH their claim and right to recover replacement costs for the failed signs at a total of 270 dealer locations. (Docket #174 at 2).

On the eve of trial, the parties were able to reach stipulations as to the number of damaged signs and their replacement cost, obviating the need for the photographic exhibits. (Docket #174).[2]

Based on the foregoing, and in light of the record in this case, the Court finds that the photographs fall under the broad ambit of "exemplification." The signs that were at issue are large physical structures installed at hundreds of dealer locations across the county. It would have been impossible for CNH to present each of the signs in the courtroom during trial and to move their admission as physical evidence to establish that the signs had failed and needed replacing. The photographs would have been vital substantive evidence, but for the eleventh-hour agreement by JLL to stipulate to the number and nature of defective signs.

However, not all of the photographing costs are compensable. At the time of trial, CNH had assignments to pursue damages for defective signs at 270 dealer locations. Accordingly, the photographs of signs at those locations, and no more, were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The photographs of any dealership from which CNH did not have an assignment were simply not relevant to the claims CNH actually pursued at trial. CNH argues that it needed to photograph all of its

---

[2]The parties' stipulation also obviated the need for the Court to resolve a dispute about the photographs' admissibility. Before trial, JLL moved *in limine* to exclude all of the photographs from evidence on the basis that CNH did not intend to call witnesses who could lay a foundation for the photographs. (Docket #145). Instead, CNH intended to call the president of the vendor it hired to take the pictures. *See* (Docket #146 at 2). Because the president did not have personal knowledge regarding the photographs that his employees took, JLL argued, he could not lay a foundation as to the photographs' authenticity. *Id.* It seems JLL would have preferred that CNH incur the extra expense of paying the individual photographers to travel to Milwaukee to testify. *Id.* at 3.

dealer locations in order to determine which has defective signs. But Section 1920 does not permit recovery for the costs a plaintiff incurs to conduct the investigation it should have completed before even filing its complaint. Therefore, the Court will award CNH the amount it paid its vendor to take photographs at the 270 dealer locations for which CNH pursued damages at trial.

The Court declines JLL's entreaty to reduce this award further. JLL argues, first, that CNH failed to obtain prior court approval under Local Rule 54(b)(5) for the location photography and therefore should not be compensated for any of it. *See* Civ. L. R. 54(b)(5) ("The Clerk of Courts will not tax the cost of demonstrative evidence created for use in the case . . . unless the party requesting taxation obtained Court approval before the costs were incurred, and . . . before the evidence was used at trial."). The photographs of defective signs, had they not been made unnecessary by stipulation, would have been substantive evidence necessary to prove an element of CNH's claim for damages. CNH did not need the Court's prior approval to collect those photographs as evidence.

JLL also argues that hiring a professional photographer to travel across the country taking pictures was an unnecessary extravagance; CNH could have simply asked its dealers to snap photos and send them to CNH for use at trial, JLL says.[3] This argument fails to account for the importance of the evidence being collected. This was a multi-million-dollar case premised on the quality of hundreds of signs; it is no surprise that CNH set

---

[3]Given that JLL objected to the admissibility of the photographs taken by CNH's vendor, it is insincere for JLL to imply it would have consented without objection to the admissibility of photographs taken by individual dealers who CNH did not intend to call to testify as to the photographs' authenticity.

out to secure high-quality images of the signs' alleged defects. *See Myrick v. WellPoint, Inc.*, 764 F.3d 662, 667 (7th Cir. 2014) ("a high-stakes suit does not come cheap to either side"); *Valmet Paper Mach., Inc. v. Beloit Corp.*, No. 93-C-0587, 1995 WL 661241, at *2 (W.D. Wis. Aug. 15, 1995) (the reasonableness of taxable costs is not measured "in isolation," but rather is assessed "from the perspective of a lawsuit in which millions of dollars are at stake"). Moreover, CNH incurred the expense of a professional photographer without any guarantee that it would prevail at trial and be awarded costs. Where, as here, there are "market incentives to economize, there is no occasion for a painstaking judicial review" of the reasonableness of fees a party in fact has paid. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1075–76 (7th Cir. 2004).

Finally, JLL quibbles over the minutiae of the photographers' invoices, arguing that CNH should not recover for the photographers' mileage and per diem expenses. The Court rejects JLL's invitation to wade into the weeds on this issue. Taking photographs of fixed signs located across the country necessarily involves travel, and the travel-related expenses will be compensated.

### 3.1.2 Interactive map database and changes thereto

CNH also seeks as an exemplification cost the $43,525.00 it spent on its Interactive Map Database. CNH says this database, which "linked the photographs to the dealership location" was necessary to "allow the parties to systematically review the sign photographs on a dealership-by-dealership basis to determine which signs at which dealership had failed." (Docket #188 at 2).

It was CNH's obligation as the plaintiff to investigate, accurately allege, and ultimately prove the scope of its damages. A database used to

facilitate that investigation is not a compensable exemplification cost. That the database could also have been useful, though not essential, to present photographic evidence to the Court does not upset this conclusion in this case. This item of cost will not be taxed.

### 3.1.3 Trial exhibit binders

Next, CNH seeks $23,159.25 for costs it paid to prepare four sets of binders containing its trial exhibits—three for the Court and one for JLL—as required by the Court's Trial Scheduling Order. *See* (Docket #188 at 2); *see also* (Docket #19 at 2) (requiring submission of three sets of each party's exhibits along with the parties' final pretrial report and requiring each party to provide copies of its exhibits to opposing counsel). These are compensable copying costs under Section 1920(4) and will be taxed.

JLL disputes the reasonableness of this high amount, taking issue with CNH using photo paper for its exhibit copies and printing in color instead of black and white. As explained above, the heart of the dispute in this case involved alleged defects in the appearance of signage, including their fading color. As the party with the burden to prove up its damages, it was reasonable for CNH to present its photographic exhibits in high quality to demonstrate the defects.

### 3.1.4 Discovery-related printing and electronic conversion

Finally, CNH seeks $4,162.44 for the costs it paid to copy documents for use as deposition exhibits and to prepare TIFF images and native electronic files for production to JLL in response to JLL's discovery requests. CNH contends these are taxable copying costs under Section 1920(4).

JLL did not dispute this item when CNH submitted its original bill of costs and offers no substantive argument in its response to CNH's instant motion as to why the cost should not be taxed. The Court finds no

independent basis for declining to tax the cost; instead, case law in this circuit supports taxing the cost. *See Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (costs for converting computer data into a readable format in response to discovery requests are compensable). The cost will be taxed.

### 3.1.5 Total taxable costs

In light of the foregoing, the Court will increase the amount taxed by the Clerk, $24,695.50, to also include $23,159.25 for trial exhibit binders, $4,162.44 for discovery-related printing and production, and the cost associated with photographing the 270 dealer locations for which CNH pursued damages at trial. The Court is confident that the parties can jointly determine the latter amount without further intervention from the Court.

Finally, pursuant to Wisconsin law, Wis. Stat. § 807.01(3), CNH is entitled to double the amount of taxable costs described above. *See* (Docket #189 and #200 at 2) (no dispute from the parties on this issue).

### 3.2 STATUTORY INTEREST

Having determined the amount of taxable costs, the Court turns to the parties' dispute over the applicable rate of post-judgment interest. CNH seeks post-judgment interest as provided by Wisconsin law, which would be 4.5% per annum until the judgment is paid. *See* Wis. Stat. § 807.01(4). JLL argues that Section 807.01(4) conflicts with the federal post-judgment interest statute, which provides that "on any money judgment in a civil case recovered in a district court[,] . . . interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). JLL does not say what the actual interest rate would be in that case, but the Court assumes it would be lower.

This argument presents a problem under the *Erie* doctrine. If the Wisconsin statute is considered substantive, it must be applied over the federal law, and if procedural, vice versa. *See Houben v. Telular Corp.*, 309 F.3d 1028, 1033 (7th Cir. 2002) (explaining *Erie* and its progeny). Happily, the problem has already been resolved by the Seventh Circuit. In *Travelers*, the Court of Appeals held that federal law controls an award of post-judgment interest in federal courts. *Travelers Ins. Co. v. Transport Ins. Co.*, 846 F.2d 1048, 1053 (7th Cir. 1988). This is true even when diversity is the basis for the federal court's jurisdiction. *Id.* (citing *Weitz Co. v. Mo–Kan Carpet*, 723 F.2d 1382, 1386 (8th Cir. 1983)). As explained by the Eighth Circuit, which the *Travelers* court quoted with approval:

> The *Erie* doctrine does not require a different result. Even if the rate of interest that a judgment will bear is in some sense 'substantive,' in that it is a part of the damages recovered by the winning side, it is also easily susceptible of characterization as 'procedural,' since it has to do exclusively with events that occur after a dispute gets to court. The question of interest, therefore, is at most in 'the uncertain area between substance and procedure,' and 'rationally capable of classification as either.' *Hanna v. Plumer*, [380 U.S. 460, 472 (1965)]. It is therefore a subject with respect to which Congress has full power to legislate, even as to cases that get into the federal courts only because of diversity of citizenship."

*Weitz Co.*, 723 F.3d at 1386. *Travelers* reversed a district court's application of Indiana's post-judgment interest statute, finding that it should have used Section 1961. *Travelers*, 846 F.2d at 1054.

CNH argues that *S.A. Healy* dictates the opposite result, but this stems from a misunderstanding of the scope of that decision. *S.A. Healy* addressed an alleged conflict between Section 807.01(3), 807.01(4), and Federal Rule of Civil Procedure 68, and the application of those rules in a

diversity action under the *Erie* doctrine. *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 307 (7th Cir. 1995). The Seventh Circuit held that Section 807.01(3)'s double taxation rule, which may affect any non-settling party, does not conflict with Rule 68's cost-shifting provision, which can only be imposed on non-settling plaintiffs. *Id.* at 309–12. Thus, in diversity cases, Section 807.01(3) must be applied. *Id.* This appears to be why JLL does not contest the doubling of costs here.

*S.A. Healy* mentioned Section 807.01(4)'s post-judgment interest rule but did not analyze it in much detail, and certainly does not opine on a conflict between it and Section 1961. *See generally id.* CNH suggests that there is no conflict, equating Section 807.01(4) to a sanction, separate and apart from post-judgment interest, as *S.A. Healy* did with Section 807.01(3)'s imposition of double costs. Wisconsin's legislature, however, does not agree. Section 807.01(4)'s language regarding interest is identical to that of Wisconsin's general post-judgment interest statutes. *See* Wis. Stat. §§ 814.04(4), 815.05(8). The only difference is that Section 807.01(4) sets the start date for interest as the date of the rejected settlement offer, not the date of judgment. *Id.* § 807.01(4). Section 807.01(4) specifically provides that its assessment of interest supersedes the other post-judgment interest provisions. *Id.* As such, the Court finds that Section 807.01(4) and Section 1961 conflict. Both attempt to set a rate of post-judgment interest on federal money judgments. *Travelers* requires that the Court apply Section 1961 notwithstanding the jurisdictional basis for this case.

4. **CONCLUSION**

For the reasons given above, CNH's motion will be granted in part and denied in part. CNH's request for review of the taxation of costs will be granted insofar as the Court will increase the amount taxed by the Clerk,

$24,695.50, to also include $23,159.25 for trial exhibit binders, $4,162.44 for discovery-related printing and production, and the cost associated with photographing signs at the 270 dealer locations for which CNH pursued damages at trial. CNH's claim for double taxable costs pursuant to Wis. Stat. § 807.01(3) will be granted. CNH's request for statutory interest pursuant to Wis. Stat. § 807.01(4) will be denied; CNH shall recover post-judgment interest at the rate dictated by 28 U.S.C. § 1961(a).

Accordingly,

**IT IS ORDERED** that CNH's motion for statutory interest, double costs, and review of the Clerk of Court's taxation of costs (Docket #232) be and the same is hereby **GRANTED in part and DENIED in part** as reflected in this Order.

Dated at Milwaukee, Wisconsin, this 19th day of September, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge